HYMAN SPRUILL LEGGETT, Plaintiff-Appellee v. AAA COOPER
TRANSPORTATION, INC., Defendant-Appellant

No. COA08-1027

(Filed 7 July 2009)

**1. Appeal and Error— subject matter jurisdiction—workers'
compensation—employer's lien—assignments of error too
broad**

An argument concerning the trial court's subject matter juris-
diction in a case involving an employer's lien against an em-
ployee's third-party recovery was dismissed where the assign-
ments of error were broad, unspecific, and not sufficient to
preserve the issue for review.

**2. Workers' Compensation— employer's lien extinguished—
no abuse of discretion**

The trial court did not abuse its discretion by extinguishing
defendant employer's workers' compensation lien against the
third-party tortfeasor where defendant contended that the trial
court had not reviewed all of the medical records submitted as
evidence, that the court's findings were not supported by compe-
tent evidence, and that the court's order resulted in a double
recovery for plaintiff.

Appeal by Defendant from order entered 25 February 2008 by
Judge Alma L. Hinton in Superior Court, Halifax County. Heard in the
Court of Appeals 12 February 2009.

*Keel O'Malley, LLP, by Joseph P. Tunstall, III, for Plaintiff-
Appellee.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Kelli A.
Burns, for Defendant-Appellant.*

STEPHENS, Judge.

*I. Procedural History and Factual Background*

Hyman Spruill Leggett ("Plaintiff") was employed in 2005 as a
full-time truck driver for AAA Cooper Transportation, Inc.
("Defendant"), located in Washington, North Carolina. During the
course of his employment, Plaintiff was involved in an automobile
collision near Greensboro, North Carolina on 24 July 2005. Pursuant

**LEGGETT v. AAA COOPER TRANSP., INC.**

[198 N.C. App. 96 (2009)]

to N.C. Gen. Stat. § 97-10.2(j), Plaintiff filed a special proceeding against Defendant on 3 January 2008. A hearing was held in Halifax County Superior Court on 24 February 2008. The evidence presented at the hearing tended to show the following:

On the day of the collision, Plaintiff was driving a tractor-trailer for Defendant when another vehicle suddenly crossed the center line and collided head-on with Plaintiff. Plaintiff's tractor-trailer then veered off an overpass, collided with a cement divider, and caught fire. Plaintiff sustained injuries to multiple parts of his body, including burns to his lower extremities and chest, six broken ribs, fractures in his hand, and injury to his back.

Plaintiff saw Dr. Gilbert Alligood ("Dr. Alligood") on 30 August 2005 complaining of chest pain. A chest x-ray showed moderately displaced fractures of the third through eighth ribs on Plaintiff's right side. Plaintiff saw Dr. David C. Miller ("Dr. Miller") on 17 October 2005, complaining of lower back pain, knee problems, and some numbness in his feet. An MRI revealed that Plaintiff had no evidence of nerve root compression, but did have pre-existing degenerative changes which were aggravated by the collision. Dr. Miller released Plaintiff to resume light duty work on 14 December 2005, but restricted Plaintiff to lifting a maximum of twenty-five pounds. Dr. Miller also released Plaintiff to drive without restrictions on the same date.

Despite Plaintiff's continuing medical problems with his back and ribs, and numbness in his toes, Plaintiff returned to work on 19 December 2005. Dr. Miller released Plaintiff entirely on 11 January 2006 after finding that Plaintiff had reached maximum medical improvement and that Plaintiff was "relatively pain free" and was performing his regular job. Plaintiff returned to Dr. Alligood on 30 January 2006 complaining of discomfort when lifting or pulling. Dr. Alligood did not think Plaintiff required any further treatment and believed Plaintiff's symptoms should continue to improve.

Plaintiff saw Dr. Alligood again on 28 February 2006 complaining of right shoulder pain. Although Defendant originally denied Plaintiff's shoulder claim on the grounds that Plaintiff's complaints were unrelated to Plaintiff's work injury, Defendant ultimately accepted Plaintiff's complaints and provided treatment. Defendant also reinstated indemnity benefits.

Plaintiff underwent an arthroscopic debridement and subacromial decompression on his right shoulder on 23 May 2006. The result-

LEGGETT v. AAA COOPER TRANSP., INC.

[198 N.C. App. 96 (2009)]

ing postoperative diagnoses were right shoulder glenoid labral tear, subacromial impingement syndrome, and chronic arthropathy.

Three days after undergoing surgery, on 26 May 2006, Plaintiff's employment was terminated by Defendant pursuant to company policy as Plaintiff's Family Medical Leave Act time had expired. Dr. Alligood saw Plaintiff for a follow-up examination on 28 July 2006 and opined that Plaintiff needed no further treatment for his previous chest trauma. He also noted that Plaintiff had made a good recovery from his shoulder surgery. Plaintiff was released to normal work duties with respect to his right shoulder on 21 September 2006.

Following Plaintiff's release to normal work without restrictions, the Industrial Commission issued an order terminating Plaintiff's workers' compensation benefits on 29 November 2006. Plaintiff underwent a physical examination on 12 December 2006, and was cleared to return to work. Plaintiff saw Dr. Robert C. Martin ("Dr. Martin") for a follow-up examination on 20 December 2006. Dr. Martin opined that Plaintiff had a full range of motion in his shoulder, normal strength, and an excellent result from his right shoulder surgery. Dr. Martin also released Plaintiff to normal work duty.

After Plaintiff was released to normal duty, Defendant offered Plaintiff a job as a dock worker in December 2006. The dock worker position paid $18.00 to $19.00 per hour, and once Plaintiff returned to work, Plaintiff could petition management to reinstate Plaintiff's seniority. Plaintiff acknowledged that the position was offered to him and that he knew the pay scale and potential for seniority, but he refused the position.

Plaintiff testified that at approximately the end of May or beginning of June 2007, he began working for East Carolina Outfitters, a hunting outfitting service, and that he earned $10.00 per hour. This employment was only seasonal, however, and Plaintiff ceased working for East Carolina Outfitters in December 2007.

Plaintiff testified that his medical bills and wages while he was out of work were paid by worker's compensation. Plaintiff's medical bills paid by Defendant, which is self-insured for workers' compensation, total $147,873.28. Plaintiff reached a settlement with the third-party tortfeasor and received $30,000.00, which was the maximum recovery possible from the third-party's insurance. After credits, Plaintiff's personal underinsured motorist coverage provided another $69,000.00 in coverage. Plaintiff's attorney's fees totaled $15,000.00.

LEGGETT v. AAA COOPER TRANSP., INC.

[198 N.C. App. 96 (2009)]

Pursuant to N.C. Gen. Stat. § 97-10.2(j), Defendant had a lien of $182,961.28 on Plaintiff's third-party recovery as of the date of the trial court's hearing on 25 February 2008. That amount represents $35,088.00 in indemnity benefits and $147,873.28 in medical expenses.

By its order entered 25 February 2008, the trial court ruled that Defendant recover nothing from the third-party funds. Defendant appeals.

## II. Subject Matter Jurisdiction

[1] Citing its assignments of error numbers 2 and 29, Defendant first argues that the trial court lacked subject matter jurisdiction over this matter. Specifically, Defendant argues that in making findings of fact regarding Plaintiff's medical treatment and disability, the trial court made factual determinations outside of its jurisdiction under N.C. Gen. Stat. § 97-10.2(j) as the Industrial Commission has exclusive jurisdiction to determine disputed issues related to an injured employee's medical treatment and disability. N.C. Gen. Stat. § 97-10.2(j) grants limited jurisdiction to the superior court to determine the amount of the employer's lien in the event the employee receives compensation from a third-party judgment or settlement. N.C. Gen. Stat. § 97-10.2(j) (2007) ("[I]n the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge . . . to determine the subrogation amount. After . . . an opportunity to be heard by all interested parties, . . . the judge shall determine, in [her] discretion, the amount, if any, of the employer's lien. . . .").

However, in neither of the two assignments of error Defendant cites for this argument does Defendant raise this asserted jurisdictional conflict between the trial court and the Industrial Commission. In assignment of error 2, Defendant contends the trial court's order amounted to an abuse of discretion because "the competent evidence of record in its entirety does not support the findings of fact or the [trial court's] determination." Defendant's assignment of error number 29 assigns error to

> [the trial court's award], and all paragraphs thereof, and to the signing and entry of the Award, on the grounds that it is based upon Findings of Fact and Conclusions of Law which are erroneous, are not supported by the competent evidence or evidence of Record, are contrary to the competent evidence of Record, and are contrary to law.

LEGGETT v. AAA COOPER TRANSP., INC.

[198 N.C. App. 96 (2009)]

Rule 10 of the North Carolina Rules of Appellate Procedure provides that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C. R. App. P. 10(c)(1). Neither of these assignments of error assert that the trial court exceeded its authority by deciding issues solely within the Industrial Commission's jurisdiction. Rather, these assignments of error "essentially amount to no more than an allegation that 'the court erred because its ruling was erroneous.'" *Walker v. Walker*, 174 N.C. App. 778, 783, 624 S.E.2d 639, 642 (2005), *disc. review denied*, 360 N.C. 491, 632 S.E.2d 774 (2006). "[Defendant's] assignment[s] of error [are] designed to allow counsel to argue anything and everything they desire in their brief on appeal. 'This assignment—like a hoopskirt—covers everything and touches nothing.'" *Wetchin v. Ocean Side Corp.*, 167 N.C. App. 756, 759, 606 S.E.2d 407, 409 (2005) (quoting *State v. Kirby*, 276 N.C. 123, 131, 171 S.E.2d 416, 422 (1970)). Such broad and unspecific assignments of error are insufficient to preserve this issue for our review. Although we acknowledge that the trial court went too far in making certain factual determinations, and that certain of the trial court's factual determinations appear to conflict with the facts as previously determined by the Industrial Commission, we are constrained to conclude that the issue of the trial court's subject matter jurisdiction is not properly before us. This argument is dismissed.

### III.  *Reduction of Workers' Compensation Lien*

[2] Defendant argues in the alternative that the trial court abused its discretion in reducing Defendant's workers' compensation lien to zero, pursuant to N.C. Gen. Stat. § 97-10.2(j).

As earlier noted, N.C. Gen. Stat. § 97-10.2(j) grants the superior court discretion to determine the amount of the employer's lien when a settlement is reached between the injured employee and the third party tortfeasor. *See id.* The trial court may reduce or completely eliminate a workers' compensation lien if warranted by the facts, and this Court may not interfere absent an abuse of discretion. *See In re Biddix*, 138 N.C. App. 500, 503-05, 530 S.E.2d 70, 72-73 (holding that the trial court did not abuse its discretion in reducing workers' compensation lien to zero where the trial court determined the $25,000.00 third-party settlement was inadequate to compensate the plaintiff, who suffered from extensive physical injuries and emotional trauma), *cert. denied*, 352 N.C. 674, 545 S.E.2d 418 (2000). Our Supreme Court

**LEGGETT v. AAA COOPER TRANSP., INC.**

[198 N.C. App. 96 (2009)]

has often stated that the test to be used when evaluating an abuse of discretion issue is "whether a decision is manifestly unsupported by reason, . . . or so arbitrary that it could not have been the result of a reasoned decision[.]" *Frost v. Mazda Motors of America, Inc.*, 353 N.C. 188, 199, 540 S.E.2d 324, 331 (2000) (internal quotation marks and citations omitted). An abuse of discretion occurs when "the trial court's decision was unsupported by reason and could not have been a result of competent inquiry." *McIntosh v. McIntosh*, 184 N.C. App. 697, 702, 646 S.E.2d 820, 823 (2007) (internal quotation marks and citation omitted).

Defendant bases its assertion that the trial court abused its discretion on three arguments: (1) that the trial court entered an order without reviewing all of the evidence of record; (2) that the trial court's findings of fact are not supported by competent evidence; and (3) that the trial court entered an order which resulted in a double recovery for Plaintiff. We address each of these arguments in turn.

### A. Review of Medical Records

Defendant first argues the trial court abused its discretion by failing to review any of Plaintiff's medical records before entering its order. Specifically, Defendant argues the trial court did not review any of the 808 pages of Plaintiff's medical records which were submitted by Plaintiff as evidence, and that a failure to review all of the evidence of record cannot be considered a "competent inquiry." *Id.*

At the section 97-10.2(j) hearing, Plaintiff submitted 808 pages of medical records as Plaintiff's Exhibit No. 7. Defendant alleges the trial court did not review any of these medical records during the hearing on 25 February 2008 or prior to entering its order the same day. Defendant argues the transcript of the hearing demonstrates the trial court did not take a recess or review the medical records off the record. However, because Defendant failed to have the trial court's alleged failure to review the medical records put on the record at the hearing, our determination of this issue is guided by pure speculation only.

Defendant had ample opportunity to bring the alleged discrepancies between Plaintiff's testimony and Plaintiff's medical records to the trial court's attention. Defendant cross-examined Plaintiff and presented a closing argument to the trial court. Plaintiff's evidence at the hearing included Plaintiff's testimony and eleven marked exhibits, including Plaintiff's medical records. The trial court made

LEGGETT v. AAA COOPER TRANSP., INC.

[198 N.C. App. 96 (2009)]

thirty-two findings of fact and five conclusions of law. Defendant does not argue any specific findings which Defendant contends are not supported by competent evidence. Moreover, in its argument below, Defendant identifies at least two findings of fact that were supported *only* by Plaintiff's medical records, which indicates the trial court did in fact review these records. On the record before us, we cannot conclude that the trial court, for this reason, abused its discretion in extinguishing Defendant's lien. Accordingly, Defendant's argument is overruled.

### B.  Trial Court's Findings of Fact

Defendant next argues the trial court abused its discretion because its findings of facts are not supported by competent evidence, and thus, did not support the trial court's conclusions of law. Again, we disagree.

Defendant specifically assigns error to findings of fact five, eleven, twelve, fourteen, fifteen, sixteen, and seventeen. We address each of these findings in turn.

The trial court's finding of fact five is as follows:

[Plaintiff] suffered severe and debilitating injuries resulting in multiple surgeries, a herniated disc and resulting radiculopathy, crushed ribs on his right side, a laceration of his right hand, a torn rotator cuff of his right shoulder and burns over 20% of his body resulting in several skin grafts and scars on both legs and his upper torso.

Defendant concedes that this finding is accurate and supported by Plaintiff's medical records. However, Defendant assigns error to this finding because it is "not supported by Plaintiff's testimony, the only evidence that Judge Hinton considered." Defendant has failed to show that finding of fact five was not supported by the evidence. "If there is any evidence in the record to support a finding of fact, it is conclusive on appeal, even if there is substantial evidence to the contrary." *Childress v. Fluor Daniel, Inc.*, 162 N.C. App. 524, 526, 590 S.E.2d 893, 896 (2004). Moreover, as Plaintiff's medical records were admitted as evidence at trial, Defendant's argument contradicts its above assertion that the trial court did not review Plaintiff's medical records.

In finding of fact twelve, the trial court found

[Plaintiff] returned to work in January 2006, while still on restrictions from his doctors and attempted to return to full duty. He had complaints of pain within weeks of returning and was restricted from heavy lifting.

Plaintiff's medical records indicate Plaintiff was able to "return to light duty work" as of 14 December 2005. Plaintiff testified at trial that he returned to work on 19 December 2005. Although the trial court's finding is inconsistent with the evidence regarding the date on which Plaintiff returned to work, this error is immaterial to the trial court's ultimate conclusions of law and does not amount to an abuse of discretion.

Defendant also assigns finding of fact fourteen as error. Finding of fact fourteen states that "[t]hree days after the surgery to repair the torn rotator cuff, [Plaintiff] was fired for missing excessive days due to his on-the-job injury." Defendant first objects to this finding of fact because the existence of Plaintiff's torn rotator cuff could only be determined by a review of Plaintiff's medical records. However, this argument merely serves to discredit Defendant's argument above that the trial court did not review the medical records.

Defendant further objects to finding of fact fourteen because it misrepresents the reason behind Plaintiff's termination. Defendant argues "[t]his finding is tantamount to concluding Defendant-Appellant discriminated against Plaintiff for his workers' compensation claim." Plaintiff testified that his employment was terminated because he had exceeded his time off work under the Family Medical Leave Act ("FMLA"). Under the FMLA, an employer is required to hold a position open for twelve weeks in a fifty-two week period for medical leave. 29 U.S.C. § 2612(a)(1) (2008). After that time, the employer may hire someone else to fulfill the position left by the employee. *Id.* Although the trial court could have made a clearer finding as to the reason for Plaintiff's termination, its finding does not go so far as to insinuate Defendant discriminated against Plaintiff for his claim. The trial court's poor phrasing in finding of fact fourteen does not amount to an abuse of discretion.

Defendant also contests the trial court's findings of fact eleven, fifteen, sixteen, and seventeen, which determined that Plaintiff sustained economic losses as a result of his injury, as follows:

11) [Plaintiff] was unable to work from July 24, 2005 until December 19, 2005. During that time he was paid $688.00 per week. The net loss during this period is approximately

$13,452.00 as he lost approximately $560.50 per week for 24 weeks.

. . . .

15) [Plaintiff] then received workers' compensation benefits from May 22, 2006 until November 29, 2006. During those 28 weeks[, Plaintiff] lost approximately $15,694.00. On November 29, 2006[,] an Order suspending [Plaintiff's] compensation was granted.

16) Defendant did offer Plaintiff a position as a dockworker. He would be required to lift significant amounts of weight and would have to take a pay cut to $18-19 per hour. He was physically unable to return to this position.

17) [Plaintiff] applied for unemployment and was granted unemployment until June, 2007. In June, [Plaintiff], after having put in approximately thirty (30) applications for employment, accepted a position as a contract guide making approximately $10.00 per hour. He worked in this position from June of 2007 until January 1, 2008. During this period he worked approximately 35-40 hours per week and lost approximately $21.21 per hour during this six months for an approximate $21,210.00.

Defendant asserts these findings were erroneous because they were in direct conflict with the Commission's finding that Plaintiff was not disabled as of 29 November 2006, when the Commission allowed Defendant to terminate Plaintiff's disability benefits. The trial court's finding, however, is supported by Plaintiff's testimony at trial. In a non-jury trial, it is the trial court's

duty to consider and weigh all the competent evidence before [it]. [The trial court] passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, [the trial court] determines which inferences shall be drawn and which shall be rejected.

*Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968) (citation omitted). Thus, the trial court's finding is supported by competent evidence, and does not constitute an abuse of discretion. Furthermore, as we held above, the issue of whether the trial court exceeded its authority by determining issues already decided by the Industrial Commission is not properly before us.

**LEGGETT v. AAA COOPER TRANSP., INC.**

[198 N.C. App. 96 (2009)]

For the reasons stated, Defendant's assignments of error in support of its arguments that the trial court abused its discretion in entering these findings of fact are overruled.

### C. Double Recovery for Plaintiff

Defendant also argues the trial court abused its discretion in extinguishing Defendant's lien because this result provided Plaintiff with a double recovery. "The purpose of the North Carolina Workers' Compensation Act is not only to provide a swift and certain remedy to an injured worker, but also to ensure a limited and determinate liability for employers." *Radzisz v. Harley Davidson of Metrolina*, 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997). "The Act was not intended to provide the employee with a windfall by recovering from both his employer and a third-party tortfeasor." *Childress*, 162 N.C. App. at 526, 590 S.E.2d at 896 (citation omitted).

Defendant argues the Supreme Court's holding in *Johnson v. Southern Industrial Constructors*, 347 N.C. 530, 495 S.E.2d 356 (1998), implicitly overruled this Court's decision in *Allen v. Rupard*, 100 N.C. App. 490, 397 S.E.2d 330 (1990), *rev. allowed*, 328 N.C. 270, 400 S.E.2d 449 (1991), which allowed a double recovery for the plaintiff. *See Rupard*, 100 N.C. App. at 497, 397 S.E.2d at 334 (affirming trial court's order that injured plaintiff and workers' compensation carrier each receive $12,500.00 out of the $25,000.00 third-party settlement, where workers' compensation lien totaled $40,000.00). In *Johnson*, our Supreme Court considered the question of

> whether a superior court may assert its jurisdiction over the jurisdiction of the Industrial Commission, pursuant to the provisions of N.C.G.S. § 97-10.2(j), by adding assumed future workers' compensation benefits to those currently paid by the employer, to establish that an employee's recovery from a third-party tort-feasor was insufficient to compensate the employer's subrogation lien, and thus allow the trial court to determine the amount and distribution of such lien.

*Johnson*, 347 N.C. at 531, 495 S.E.2d at 357. In *Johnson*, the Supreme Court held that the trial court could not assert its jurisdiction over the jurisdiction of the Industrial Commission in this manner. *Id.* at 534, 495 S.E.2d at 358. When *Johnson* was decided, N.C. Gen. Stat. § 97-10.2(j) provided in part:

> Notwithstanding any other subsection in this section, in the event that a judgment is obtained *which is insufficient to com-*

*pensate the subrogation claim of the Workers' Compensation Insurance Carrier,* or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to . . . the presiding judge before whom the cause of action is pending, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard . . . , the judge shall determine, in his discretion, the amount, if any, of the employer's lien.

N.C. Gen. Stat. § 97-10.2(j) (1991) (emphasis added).

Following our decision in *Johnson,* N.C. Gen. Stat. § 97-10.2(j) was amended to provide in pertinent part:

Notwithstanding any other subsection in this section, *in the event that a judgment is obtained by the employee in an action against a third party,* or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge of the county in which the cause of action arose, where the injured employee resides or the presiding judge before whom the cause of action is pending, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, the judge shall determine, in his discretion, the amount, if any, of the employer's lien, *whether based on accrued or prospective workers' compensation benefits,* and the amount of cost of the third-party litigation to be shared between the employee and employer. *The judge shall consider the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future, the net recovery to plaintiff, the likelihood of the plaintiff prevailing at trial or on appeal, the need for finality in the litigation, and any other factors the court deems just and reasonable, in determining the appropriate amount of the employer's lien.*

N.C. Gen. Stat. § 97-10.2(j) (1999) (emphasis added where statute was amended).[1]

---

1. N.C. Gen. Stat. § 97-10.2(j) was also amended in 2004, in which the first sentence of this section was rewritten to read as follows: "Notwithstanding any other subsection in this section, in the event that a judgment is obtained by the employee in an action against a third party, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior

**LEGGETT v. AAA COOPER TRANSP., INC.**

[198 N.C. App. 96 (2009)]

The amendment to section 97-10.2(j) eliminated the requirement that a third-party settlement be insufficient to compensate the workers' compensation carrier before the trial court could exercise its discretion in determining the subrogation amount. *See Biddix*, 138 N.C. App. at 503, 530 S.E.2d at 72 ("[T]here is no requirement that the settlement amount be insufficient to compensate the workers' compensation insurance carrier[.]"). Thus, under the amended statute, the trial court has broader discretion to reduce or eliminate the employer's lien. This Court has recognized the broader discretion given the trial court and upheld orders reducing the employer's lien even where the third-party settlement was sufficient to compensate the workers' compensation carrier.

In *Biddix*, Biddix received workers' compensation benefits in the amount of $16,844.03 and temporary total disability benefits in the amount of $1,874.40 from Wal-Mart, Inc. after being injured as a result of a third-party's negligence in the course and scope of her employment with Wal-Mart. *Id.* at 501, 530 S.E.2d at 70. "Biddix subsequently entered into a settlement with the insurer for the third[-]party tortfeasor for $25,000[.]" *Id.* "The trial court entered an order concluding that the settlement did not adequately compensate Biddix for her injuries and ordering the elimination of Wal-Mart's subrogation lien." *Id.* at 502, 530 S.E.2d at 71. "[T]he [trial] court made findings with respect to the extent of Biddix's injuries, her ongoing pain and suffering, her medical expenses as paid by Wal-Mart, her compensation for temporary disability, and the amount of the settlement and the fact that the third[-]party tortfeasor had no additional assets from which she could recover[,]" and concluded that the amount of the settlement inadequately compensated Biddix for her injuries. *Id.* at 505, 530 S.E.2d at 72-73. On appeal, this Court held that the trial court's determination that the workers' compensation lien be eliminated was factually supported and was a proper, constitutional exercise of its discretion. *Id.*

Likewise in the present case, the trial court made findings of fact as to the extent of Plaintiff's injuries, and determined Plaintiff was not adequately compensated by workers' compensation benefits. Here, the trial court found

Plaintiff was not made whole pursuant to the workers' compensation system which did not compensate Plaintiff for his pain and

court judge of the county in which the cause of action arose or where the injured employee resides, or to a presiding judge of either district, to determine the subrogation amount."

IN RE J.V. & M.V.

[198 N.C. App. 108 (2009)]

suffering, loss of mobility and independence, emotional damages, scarring, negligent infliction of emotional distress, loss of consortium for his wife and the strain this financial loss has placed on Plaintiff and his family due to the seriously reduced income for plaintiff.

The trial court thus concluded that N.C. Gen. Stat. § 97-10.2(j) compelled it "to use its broad discretion to fairly allocate proceeds that fall 'short of being sufficient to reimburse [P]laintiff for his pain[,] suffering[,] and other losses.' " *Rupard*, 100 N.C. App. at 497, 397 S.E.2d at 334. In light of the broader discretion enjoyed by the trial court under the amended version of section 97-10.2(j) applicable to this case and given our recent holding in *Biddix*, we conclude the trial court did not abuse its discretion in eliminating Defendant's lien, as this outcome is "justified by the equities of the case." *Sherman v. Home Depot U.S.A.*, 160 N.C. App. 404, 408, 588 S.E.2d 478, 480 (2003) (citation omitted). Defendant's argument is overruled. Defendant has failed to argue its remaining assignments of error, and they are deemed abandoned. N.C. R. App. P. 28(b)(6). The order of the trial court before this Court for review is

AFFIRMED.

Judges STEELMAN and GEER concur.

———

IN THE MATTER OF:  J.V. AND M.V.